UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEONNE B. JONES                                        CIVIL ACTION

VERSUS                                                 NO. 06-0048

JOHN E. POTTER, POSTMASTER                             SECTION "R" (3)
UNITED STATES POSTAL SERVICE                           28 U.S.C. § 636(c)

ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed on behalf of the defendant, John E. Potter, Postmaster United States Postal Service ("USPS" or "the Agency"). Plaintiff, Deonne B. Jones ("Jones"), filed a formal opposition memorandum and the matter was the subject of an oral hearing. Thereafter, the matter was deemed submitted for decision.

This matter is before the Court pursuant to the parties' consent to proceed pursuant to 28 U.S.C. 636(c). The matter is ready for trial, discovery is complete, the pretrial conference is imminent and the two-day bench trial is scheduled to commence on July 30, 2007. Having heard oral argument and considered the record and the written submissions of the parties, Defendant's Motion for Summary Judgment [Doc. No. 32] is GRANTED for the reasons set forth below.

I. CONTENTIONS OF THE PARTIES

The defendant contends that summary judgment is warranted on plaintiff's claims that her 14-day suspension was the result of retaliation for filing prior EEO complaints and, alternatively,

1

that her suspension was the result of "failure to accommodate" or disability discrimination.  The

Agency  argues that Jones cannot meet her light burden of establishing a *prima facie* case of

retaliation and that, even assuming that plaintiff can satisfy her initial burden, the defendant has

produced ample evidence of a legitimate non-discriminatory reason for the fourteen-day suspension

at issue.  More specifically, plaintiff cannot demonstrate that the Agency's reasons were false, a

mere pretext for retaliation or a motivating factor in its decision to impose disciplinary action.

As to plaintiff's failure to accommodate or disability discrimination claim, the government

contends that the plaintiff cannot make out a *prima facie* case of disability discrimination.  In this

regard, USPS submits that plaintiff cannot show  that she was substantially limited in a major life

activity. The government highlights that it is undisputed that progressive discipline did not ensue

until Jones was fully cleared for duty and that disciplinary action was imposed was based on a clear

record of repeated failure to attend her job assignments.  In summary, the defendant's position is that

the plaintiff cannot prove her claim of retaliation and disability discrimination with her own self-

serving conjecture and speculation that the  Agency's action was a pretext for unlawful

discrimination or reprisal.  *See* Postmaster's Motion for Summary Judgment and Memorandum in

Support filed June 21, 2007 [Doc. No. 32].

Plaintiff refers the Court to the Office of Workers' Compensation's (OWCP) and the United

States Postmaster General's records, thereby indicating that said records are not disputed.  Jones

further argues that she "is at the mercy of the court due to failure of the government [which] caused

destruction of [her] real and personal property" in the wake of Hurricane Katrina.  *See* Plaintiff's

Memorandum in Opposition to the Postmaster's Motion for Summary Judgment filed July 6, 2007

[Doc. No. 35].  Plaintiff further argues generally that the "EEO process is designed to defeat your

claim." *Id.*  Plaintiff disagrees with the findings of Dr. Christopher Cenac, which were based upon his physical examination of Jones and MRI results.  Plaintiff submits that the assessments of her treating physician Dr. Henry Evans are entitled to great weight.  Finally, plaintiff argues that it was her impression that USPS Manager Watson (Distribution Operations) never attempted to resolve any of her concerns and that he made it his goal to have her terminated.  In this regard, plaintiff contends that MDO Watson is the chief and that he completely controls plaintiff's supervisor (Duplessis) and the entire Management Team.  *Id.*

## II. PROCEDURAL BACKGROUND and UNDISPUTED FACTUAL BACKGROUND[1]

On January 13, 2006, plaintiff, Deonne B. Jones, filed this employment discrimination lawsuit alleging that her fourteen (14) day suspension was the result of illegal animus (retaliation and disability discrimination).  It is undisputed that plaintiff was not terminated and that, since Katrina, plaintiff relocated to Texas where she continued to work for the Postal Service.  As aforestated, Jones alleges that she is a disabled person who had previously filed EEO complaints against her employer USPS and that she has exhausted her administrative remedies.  It is undisputed that, at all pertinent times, Jones was employed as a mail processing clerk at the Main Post Office at 701 Loyola Avenue in New Orleans.  The parties further do not dispute that the Jones had availed herself of the EEO process on numerous occasions – *i.e.*, 30 complaints only two of which (one in 1993 and one in 1998) resulted in settlement at the administrative and district court level, respectively.

Jones' September, 1999 on-the-job injury spawned the subject complaints of reprisal and

_____

[1]*See* Declaration Nicolas Juarez and attachments (Doc. No 32-8 through 32-14); Declaration of Raquel Perry and attachments (Doc. No. 32-15 *et seq.*).

disability discrimination.  Plaintiff sprained her right shoulder while pulling open a "Post Con" (mail cart).  She applied for FECA benefits and the Department of Labor's Office of Workers' Compensation Program ("OWCP") awarded FECA benefits.  Jones remained off of the job for eight months.

On May 1, 2000, USPS offered plaintiff a modified job for the position of modified mail processor with reporting hours of 10:30 p.m. to 7:00 a.m.[2]  The modified job offered to Jones was consistent with the plaintiff's ability and restrictions, to wit:  no reaching above the shoulder;  no climbing, kneeling, stooping or twisting; carrying  not to exceed 5-10 pounds six hours per day; sitting, standing, grasping and fine manipulation four hours per day; continuous walking, pushing and pulling two hours per day; and intermittent walking, pushing and pulling six hours per day.  Plaintiff was formally notified that all unscheduled absences should be reported to her immediate supervisor and that absences related to her on-the-job injury require substantive and probative documentation for leave or LWOP/IOD approval.  Additionally, plaintiff was formally notified that, if she wanted to keep her injury file open with OWCP, it was necessary for her to update her medical documentation at a minimum of every six (6) months.  *See* Modified Job Offer dated May 1, 2000 [Doc. No. 32-16/pp. 14-15 of 40].   On May 3, 2000, Jones accepted the modified job offer.  *See* Plaintiff's Written Acceptance dated May 3, 2000 [Rec. Doc. No. 32-16/p. 17 of 40].

On January 7, 2002, OWCP closed plaintiff's case.  *See* Message dated April 16, 2002 (noting that "review of OWCP records has revealed that this case was placed in a closed status effective 01-07-02") [Doc. No.32-16/p. 20 of 40].   At the direction of OWCP, Douglas A. Swift, M.D., M.S.P.H., performed a fitness for duty evaluation of the plaintiff on June 7, 2002.  Dr. Swift obtained a comprehensive medical history and had the plaintiff execute an Impairment Evaluation

---

[2]Postmaster's Statement of Undisputed Fact at ¶ 9 [Doc. No. 32-2].

Questionnaire.  Dr. Swift determined that plaintiff was not disabled.  He determined that Jones was permanently restricted from above shoulder or overhead work and that she had a maximum lift capability of ten pounds, but no limitations on walking, bending or stooping.  Dr. Smith further concluded that the plaintiff was medically capable of working between 6 a.m. and 12 midnight.  *See* Dr. Douglas A. Swift's Report dated June 7, 2002 [Doc. No. 32-16/ pp. 28-29 of 40].   B a s e d upon plaintiff's medical status changes reported by Dr. Swift, effective July 13, 2002, Jones was directed to report for a limited duty assignment on Tour 3 at 3:30 p.m.  Plaintiff was also notified that if she failed to report as scheduled that her absence would be disapproved and charged as Absent Without Official Leave (AWOL).  *See* Notification of Limited Duty Assignment dated July 10, 2002 [Doc. No. 32-16/p. 30 of 40].   On July 11, 2002, plaintiff refused to sign and accept the modified limited duty job assignment. *Id.*

On July 13, 2002, plaintiff submitted a note from her treating physician (Dr. Henry M. Evans). Dr. Evans did <u>not</u> find that the plaintiff was disabled or unable to work.   Dr. Evans indicated that Jones was restricted to working a limited daytime schedule between the hours of 8:00 a.m. to 4:30 p.m., without providing any justification therefor.   [Doc. No. 32-16/p. 32 of 40].  On July 16, 2002, plaintiff attempted to clock in at 8:00 a.m. but was not allowed to do so.  *Id.* at p. 33 of 40.

Plaintiff filed Form CA-7 claims for compensation for the periods of July 16, 2002 to July 26, 2002 and  July 29, 2002 to August 9, 2002.  [Doc. No. 32-16/pp. 35-36 of 40 and Doc. No. 32-17/pp. 1-5 of 39] .   The Agency challenged the claims noting that Jones had taken leave without pay (LWOP) for seven of her daily work hours for her own convenience – *i.e.*, due to the conflict between her work and school schedules.  The summary judgment record reflects that, as a result of the plaintiff's school schedule, she attended her assignment at the Post Office only one-hour per day. *Id*.  On September 5, 2002, Jones was notified by OWCP that the claims examiner determined that

a second opinion evaluation was necessary to determine her claim for benefits under the Federal Employees' Compensation Act (FECA).  *See* Letter from the U.S. Department of Labor Medical Management Assistant Vonda Ashley dated September 5, 2002 [Doc. No. 32-17/pp. 6-8of 39]. Plaintiff was directed to report for an examination by Dr. Christopher Cenac, a specialist in orthopaedic surgery.   On September 24, 2002, Dr. Cenac evaluated the plaintiff.  Subsequent to his examination and later MRI results, he issued two reports.  He found that the plaintiff had subjective complaints not substantiated by any objective physical findings, she had long since reached maximum medical cure from any injuries she sustained in 1999 and that there were no physical limitations applicable.[3]  Dr. Cenac  released the plaintiff to return to her prior occupation.  [Doc. No. 32-17/pp. 11-14 of 39].   He specifically noted that there was no evidence of any orthopedic mechanical dysfunction or neurological deficits involving either the cervical spine or shoulders.  *Id.* at p. 12 of 39.

On November 18, 2002, Jones filed another Form CA-7 claim for compensation for the period of August 12, 2002 to November 15, 2002.  [ Doc. No. 32-17/pp. 15-16 of 39].  The  Agency disputed this claim for the reason that plaintiff was only working one hour a day due to her conflicting school schedule and not because of any disability.  *Id.*

On November 27, 2002, plaintiff was notified that her FECA claim for benefits was disallowed for the reasons amply detailed in Dr. Cenac's report and that a termination of workers' compensation benefits would follow.  [Doc. No. 32-17/pp. 18-21of 39].

On December 10, 2002, plaintiff was formally notified of the decision regarding her FECA claim by Aubrey J. Watson, Jr., Manager, Distribution Operations.  Based upon plaintiff's release to

---

[3] See MRI Report dated September 30, 2002 (noting very tiny joint effusion which could be normal for this patient, no evidence of impingement and no evidence of rotator cuff tear) [Doc. No. 32-17/p. 14 of 39].

full duty by Dr. Cenac, plaintiff was directed to report to her assignment on Tour 1 at 10:30 p.m. Plaintiff was further instructed that her failure to report for duty as scheduled or failure to notify the office of her inability to report to duty would result in such absence being disapproved and charged to Absent Without Official Leave (AWOL).  [Doc. No. 32-17/p. 25 of 39].

On December 17, 2002, plaintiff submitted a medical prescription form with notations from the office of her physician.  Dr. Evans' note stated that Jones was disabled from December 6, 2002 to December 12, 2002 secondary to her job related shoulder injury, *but that she has now sufficiently recovered and is able to return to work as of December 16, 2006.*  [Doc. No. 32-17/p. 26 of 39].

On January 15, 2003, plaintiff filed a CA-2a claim for recurrence of disability.  [Doc. No. 32-17/pp. 29-31 of 39].  On March 10, 2003, the Department of Labor notified plaintiff that she had last returned to work on December 16, 2002, but claimed disability from work beginning January 13, 2003.  [Doc. No. 32-17/pp. 34-35 of 39].  Plaintiff was further advised that this was insufficient to establish that the recurrence was work-related and that further information would be necessary.  *Id.* at p. 35.  Plaintiff failed to provide any additional information within the requisite thirty (30) day period.  The record is undisputed that Jones took no further action on either her recurrence claim or the termination of workers' compensation benefits. On December 1, 2 and 9 of 2002, plaintiff was notified of her ineligibility for Family Medical Leave Act (FMLA) benefits due to the fact that she had not worked the requisite 1250 hours during the twelve month period prior to the commencement of her leave.  [Doc. No. 32-17/pp. 22-24 of 39].

On January 14, 2003, Supervisor Tomica Duplessis (Attendance Control) requested and issued a Letter of Warning (LOW) to plaintiff for her failure to be in regular attendance.  The warning referenced Jones' unscheduled absences on 11/27, 11/29, 11/30, 12/04, 12/05 *and 12/19/2002.*  The Agency's January 14th written warning further detailed plaintiff's violations of the Employee and

Labor Relations Manual, Parts 511.43 and 666.81, which require employees' regular attendance, maintenance of their assigned schedule, efforts to avoid unscheduled absences and that they provide acceptable evidence for absences when required.  [Doc. No. 32-14/pp. 12-13 of 37].

On April 23, 2003, Supervisor Tomica Duplessis (Attendance Control) requested and issued a 7-day suspension to Jones for failure to maintain her assigned schedule.  The aforesaid suspension referenced plaintiff's subsequent unscheduled absences on 2/24-26/2003, 3/04/2003, 3/05-08/2003, 3/12/2003, 3/26-27/2003 and 4/03/2003, all in violation of the aforesaid rules requiring employee attendance at work, *inter alia*.  The April 23rd Notice of Disciplinary Action further explained that the Employee and Labor Relations Manual requires – i.e., "Postal officials will take"– appropriate disciplinary measures to correct violations of attendance requirements.  [Doc. No. 32-14/pp. 24-25 of 37].    Additionally, Manager James A. Nelson of  Distribution Operations concurred in the discipline, particularly considering that plaintiff was previously issued a formal letter warning that future attendance deficiencies would  result in more severe disciplinary action including suspension. *Id.* at p. 25.

On August 8, 2003, Supervisor Tomica Duplessis (Attendance Control) requested and issued a 14-day suspension to Jones for failure to maintain her assigned schedule.  The August 8th Notice of Disciplinary Action (14-day suspension) specifically noted the prior January 14th Letter of Warning and the April 23rd Notice of Disciplinary Action issued to plaintiff for the very same type of infractions of the rules. [Doc. No. 32-14/pp. 14-15 of 37].

The summary judgment record reflects that plaintiff refused to participate in or cooperate with the   July 31, 2003  pre-disciplinary  interview/investigation  conducted by Supervisor Duplessis prefatory to Jones' 14-Day Suspension.  Plaintiff's  response to the investigation was that she would take the 5th and the 14th Amendments.  *See* EEO Investigative Affidavit [Doc. No. 32-13/p. 9 of 37].

Most notably, the summary judgment record admits but one reasonable conclusion – *i.e.,* plaintiff's personal convenience primed compliance with her work assignment.  *See*  Plaintiff's Compensation Claim Forms [Doc. No. 32-16/pp. 35-40 of 40; Doc. No. 32-17/pp. 1-5 of 39; Doc. No. 32-17/pp. 15-17 of 39].  The aforesaid uncontroverted facts regarding plaintiff's absenteeism are bolstered by plaintiff's own treating physician's assessment dated December 16, 2002, stating that: "she (Jones) has now sufficiently recovered and is able to return to work." [Doc. No. 32-17/p. 26 of 29].  Nevertheless, Jones' absenteeism (UA and AWOL) persisted and were met with appropriate graduated disciplinary action addressing her pernicious attendance problem, ranging from the January 14, 2003 Letter of Warning, the April 23, 2003 Notice of 7-Day Suspension and, finally, the August 8, 2003 Notice of 14-Day Suspension (which is the subject of the instant complaint).

### III. SUMMARY JUDGMENT STANDARD

The principal purpose of Fed. R. Civ. P. 56 is to "isolate and dispose" of factually unsupported claims.[4]  Summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact...."[5]  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.[6]

The evidence of the non-movant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor.[7]  Nevertheless, "'only *reasonable* inferences can be

---

[4]*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[5]Fed. R. Civ. P. 56(c).

[6]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

[7]*See Gowesky v. Singing River Hosp. Systems.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Harken Exploration Co. v. Sphere Drake Ins.*

9

drawn from the evidence in favor of the nonmoving party.'"[8]  "If the [nonmoving party's] theory is

... senseless, no reasonable jury could find in its favor, and summary judgment should be granted."[9]

The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts,"

conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged

factual dispute, or "only a scintilla of evidence."[10]   "Unsubstantiated assertions, improbable

inferences, and unsupported speculation are not sufficient to defeat a motion for summary

judgment."[11]

Additionally, summary judgment will be granted against "a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."[12]   A complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial.[13]  "In such a

situation, there can be 'no genuine issue of material fact' since a complete failure of proof concerning

---

*PLC*, 261 F.3d 466, 471 (5th Cir.2001);  *Christopher Vill. Ltd. P'ship v. Retsinas*, 190 F.3d 310, 314 (5th Cir.1999).

[8]*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (*quoting H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir.1989)).

[9]*Id.* at 468-69, 112 S.Ct. 2072.

[10]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir. 1994).

[11]*Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir.2003).

[12]*Celotex*, 477 U.S. at 323.

[13]*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex*, 477 U.S. at 323; *Wenner v. Texas Lottery Commission*, 123 F.3d 321, 324 (5th Cir.), *cert. denied*, 523 U.S. 1073 (1998).

an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[14]

The Court has no duty to search the record for triable issues.[15]  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.[16]   "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."[17]   Conclusory statements, speculation and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.[18]  "Summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[19]

## IV. ANALYSIS

### A. Retaliation

"Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee *because* [s]he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"[20]  "The

---

[14]*Celotex,* 477 U.S. at 322-23.

[15]*Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[16]*Celotex,* 477 U.S. at 248-50;  *Abbot v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir. 1993).

[17]*Ragas,* 136 F.3d at 458 (emphasis added).

[18]*Id.*; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996).

[19]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir. 1994) (*citing Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir. 1993)); *see also Read v. BT Alex Brown*, 2003 WL 21754966 * 2 (5th Cir.), *cert. denied*, 2004 WL 323271 (U.S. February 23, 2004).

[20]*Burlington Northern & Santa Fe Rwy. Co. v. White*, 126 S.Ct. 2405, 2411 (2006) (citing 42 U.S.C. § 2000e-3 (a)).

anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers."[21]

The framework for analyzing a retaliation claim is the same as that used in the discrimination context.[22] To establish a *prima facie* case of Title VII retaliation, the plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between that protected activity and the adverse employment action.[23] In order to withstand summary judgment, Jones must offer evidence from which the trier of fact may infer that retaliation, in whole or in part, motivated the adverse employment action.[24]

The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard.[25] The plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a *prima facie* case."[26] "Assuming the plaintiff is able to establish [her] prima facie case, the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the

---

[21]*Id.* (internal citations omitted).

[22]*See Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).

[23]*Bryan v. Chertoff*, 217 Fed.Appx. 289 (5th Cir. 2007) (*citing Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)); *Raggs v Mississippi Power &Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

[24]*Roberson v. Alltel Information Services,* 373 F.3d 647, 655 (5th Cir. 2004).

[25]*Id.*

[26] *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir.1996) (citation omitted).

employment action."[27]  If the defendant satisfies this burden, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose.[28]

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to offer legitimate, non-discriminatory reasons for the adverse employment action.[29]  The plaintiff must then submit sufficient evidence that would permit the trier of fact to determine that the defendant's proffered reasons are pretextual.[30]  A plaintiff must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment. The ultimate determination is whether, "but for" the protected conduct, the employer would not have engaged in the adverse employment action."[31]

Plaintiff points to her 1993 sexual harassment complaint and a 1998 civil action as reasons why her supervisor targeted her for retaliation.[32]  In other words, plaintiff's evidence of causal nexus is that the subject August, 2003 adverse employment action occurred sometime *after* the aforesaid incidents of prior protected activity (1993 and 1998).   The Fifth Circuit has held that "the mere fact that some adverse action is taken after an employee engages in some protected activity will not

---

[27]*Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir.2001).

[28]*Id.*

[29]*Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir.1998); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996).

[30]*Sherrod*, 132 F.3d at 1122.

[31]*Rios*, 252 F.3d at 380 (*citing Sherrod*, 132 F.3d at 1122).

[32]*See* Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at p. 1.

always be enough for a *prima facie* case...."[33]

The five-year time lapse between Jones' last protected activity (1998) and the adverse events at issue (2003) undermines the purported causal connection between those events. Moreover, Supervisor Tomica Duplessis (not Manager Watson) requested and issued the January 14, 2003 Letter of Warning, the April 23, 2003 Notice of 7-Day Suspension and the August 8, 2003 Notice of 14-Day Suspension (which is the subject of the instant complaint). Jones cannot demonstrate that Duplessis was aware of plaintiff's history of prior EEO activity. Indeed, Duplessis was not involved in any of the prior EEO matters and she has denied any knowledge of same. The aforesaid undisputed facts eviscerate Jones' *prima facie* case. Aside from plaintiff's *subjective* perception that ManagerWatson controlled Supervisor Duplessis, there is no evidence which suggests that Watson orchestrated the alleged retaliatory adverse action by Supervisor Duplessis and other management team members.[34] In this case, Supervisor Duplessis *both* requested and issued the disciplinary action for violation of workplace rules and plaintiff cannot show that she harbored any retaliatory *animus*. Moreover, Supervisor Duplessis undertook the pre-disciplinary investigation and plaintiff took the 5th Amendment, refusing to cooperate with her investigation. Suffice it to say, there is no evidence which satisfies the "cat's paw" scenario suggested other than plaintiff's unsubstantiated argument (not competent summary judgment evidence).

Even if the Court were to assume that Jones had actually established a *prima facie* case of retaliatory conduct, USPS has proffered legitimate, non-retaliatory reasons for the disciplinary course

---

[33]*Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1188 n. 3 (5th Cir.),, 522 U.S. 948 (1997); *see also Raggs,* 279 F.3d at 471.

[34]*See* Plaintiff's Memorandum in Opposition at p. 2.

pursued to cure Jones' attendance work rule violations. The record amply demonstrates that plaintiff refused to comply with, if not, flouted, the Agency's rules.  It is uncontroverted that Supervisor Duplessis was required to enforce the rules and did so in the case of other employees, who similarly violated the work rules proscribing unscheduled absences and absences without leave.  Because the defendant has produced such evidence, the burden then shifts back to Jones to produce evidence that the employer's proffered non-retaliatory reasons are pre-textual or false and that retaliation was a substantial motivating factor.[35]

Plaintiff has failed to rebut the defendant's legitimate reasons for graduated discipline culminating in the 14-day suspension for Jones' unscheduled, unexcused absences without leave. Moreover, the fact that Supervisor Duplessis denies any awareness of plaintiff's prior protected activity further obviates any retaliatory connection between prior EEO activity and the subject 14-day suspension.

Plaintiff was officially warned in writing twice of the escalating disciplinary consequences of any continuing failure to abide by the Agency's work rules requiring attendance at work assignments.  The Notice of 14-day suspension specifically referenced the January 2003 Letter of Warning and the April, 2003 7-day suspension.   These undisputed facts make it illogical to conclude that the 14-day suspension was retaliation for protected activity which occurred in 1993 and 1998.

Plaintiff must raise a genuine issue of material fact to avoid summary judgment. Jones has offered no competent summary judgment evidence beyond her own unsubstantiated conclusory allegations of pretext and retaliatory animus.  Therefore, Jones cannot prevail on her claim of reprisal.

### B.  The Rehabilitation Act

---

[35]*Raggs,* 278 F.3d at 468 (citations omitted).

Plaintiff alternatively claims that her 14-day suspension was the result of the Agency's disability discrimination or "failure to accommodate" her disability resulting from her 1999 on-the-job injury.  The Postal Service contends that, based upon the undisputed facts and the governing law, Jones was not disabled, regarded as disabled or treated less favorably than non-disabled employees. Defendant submits that it is uncontroverted that it had a legitimate non-discriminatory reason for its decision to issue the 14-day suspension to Jones and there is no evidence of pretext or discriminatory animus.  Therefore, summary judgment is warranted.

A federal employee's remedy for employment-related disability discrimination is the Rehabilitation Act.[36]  Jones asserts that the Postal Service violated the Rehabilitation Act, 29 U.S.C. § 701, et seq. Claims under either section 501 or 504 of the Rehabilitation Act incorporate the substantive standards of the Americans with Disabilities Act, 29 U.S.C. §§ 791(g) and 794(d). Under the ADA, a person is disabled if he "either (1) is actually disabled, (2) is regarded as being disabled, or (3) has a record of being disabled."[37]

The ADA defines "disability" as "a mental or physical impairment [which] must substantially limit an individual's ability to perform at least one major life activity."[38]  Whether an individual suffers from a disability must be determined on a case-by-case basis.[39]  "A physical impairment,

---

[36]*See* 42 U.S.C. § 12111(5)(B) (excluding the United States as an employer under the ADA); *Plautz v. Potter*, 156 Fed. Appx. 812, 815-16 (6th Cir.2005) (unpublished).

[37]*Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir.2001).

[38]*Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 655 (5th Cir.2003).

[39]*Albertson's, Inc. v. Kirkingberg*, 527 U.S. 555, 556, 119 S.Ct. 2162, 144 L.Ed.2d 518 (2000).

standing alone, is not necessarily a disability as contemplated by the ADA."[40]   Whether an impairment is substantially limiting depends on "its nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact."[41]   "'Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.'"[42]   Major life activities include " 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'"[43] "[A] plaintiff must prove a substantial limit with specific evidence that his particular impairment substantially limits his particular major life activity."[44]

"'[S]ubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'"[45]   "'The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'"[46]   An employee's

---

[40]*Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995).

[41]*Dupre*, 242 F.3d at 614; *see also Pegram v. Honeywell, Inc*., 361 F.3d 272, 285 (5th Cir.2004).

[42]*Bennett v. Calabrian Chems. Corp.*, 324 F. Supp.2d 815, 827 (E. D. Tex. 2004) (*quoting Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir.1998)).

[43]*Id*. at 826 (*quoting Talk v. Delta Airlines, Inc*., 165 F.3d 1021, 1024-25 (5th Cir.1999)).

[44]*Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 656 (5th Cir.2003).

[45]*Toyota Motor Mfg., Kentucky Inc. v. Williams*, 534 U.S. 184, 200 (2002) (*quoting* 29 C.F.R. § 1630.2(j)(3)); *accord Talk*, 165 F.3d at 1025.

[46] *Id.* (*quoting* 29 C.F.R. § 1630.2(j)(3)(i)); *accord Dupre*, 242 F.3d at 614; *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d  847, 860 (5th Cir. 1999); *Deas v. River West, L.P.*, 152 F.3d 471, 481 (5th Cir. 1998), *cert. denied,* 527 U.S. 1035, 1044 (1999); *Pryor*, 138 F.3d at 1027; *Hamilton v. Southwestern Bell Telephone Co.,* 136 F.3d 1047, 1051 (5th Cir. 1998); see Mason, 274 F.3d at 317.

"inability to perform one aspect of her job while retaining the ability to perform the work in general does not amount to a substantial limitation of the activity of working."[47]

"'An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one.'"[48]  The Supreme Court has stated that nothing in the Act, the Court's previous opinions, or the regulations suggests that in the context of major life activities other than working, classes or ranges within those activities should be considered.[49]  Therefore, "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job."[50]  "As a result, occupation-specific tasks may have only limited relevance to the manual task inquiry."[51]

The Rehabilitation Act of 1973 provides in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(20) of this title, shall, *solely by reason of her or his disability*, be excluded from participation in, denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.

---

[47]*Dutcher, 53 F.3d at 727 (citing Chandler v. City of Dallas*, 2 F.3d 1385, 1392 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *see Williams*, 534 U.S. at 200, 122 S.Ct. 681 (*citing Sutton*, 527 U.S. at 492, 119 S.Ct. 2139); *Dupre*, 242 F.3d at 614 (*citing Pryor*, 138 F.3d at 1027).

[48]*Sherrod*, 132 F.3d at 1120 (quoting Chandler, 2 F.3d at 1392).

[49]*See Williams*, 534 U.S. at 200, 122 S.Ct. 681.

[50]*Id.*

[51] *Id.*

29 U.S.C. § 794(a) (emphasis added).  Besides the patently plain language of the statute, the circuits that have had occasion to interpret its language have concluded that, unlike cases decided under the ADA, *there can be no other cause to which the discrimination can be attributed aside from the employee's disability.*[52]  Indeed, "the word solely provides the key: the discrimination must result from the handicap and from the handicap alone."[53]  The Fifth Circuit has not deviated from the "solely" requirement, as evidenced by its most recent formulations of the relevant element in Rehabilitation Act cases.[54]

Applying the proper standard, it is manifestly clear that, even operating under the assumption that Jones had a legally cognizable disability at the relevant time, she cannot prove that such disability constituted the sole predicate of the disciplinary action at issue.  Indeed, she does not even allege as much.  Apparently, Jones is attempting to proceed under the more lenient, but inapplicable, ADA standard arguing that cross examination of Manager Watson may reveal a discriminatory motive.  However, Manager Watson's motivation is irrelevant because, in this case, it is undisputed that Supervisor Duplessis reported plaintiff's infractions, conducted the preliminary investigation and issued the notification of disciplinary action (14-day suspension).

---

[52]*See Soledad v. U.S. Dept. of Treasury,* 304 F.3d 500,  505 (5th Cir.2002) (concluding that the proper question to be asked in a Rehabilitation Act claim is whether the discrimination took place "solely because of" the disability).

[53]*Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir.), *cert. denied*, 507 U.S. 910 (1993). *See also Crocker v. Runyon*, 207 F.3d 314, 318-19 (6th Cir.2000) ("It is not enough for the plaintiff to show that his handicap contributed to the non-hiring, because the Rehabilitation Act 'does not forbid decisions based on the actual attributes of the handicap' ");  *Amir v. St. Louis University*, 184 F.3d 1017, 1029 n. 5 (8th Cir.1999) ("Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that the person's disability serve as the sole impetus for a defendant's adverse action against the plaintiff").

[54]*See, e.g., Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997).

Jones has utterly failed to present evidence that the adverse action was based "solely" on a disability as required under the Rehabilitation Act. The heightened requirements contained in the Rehabilitation Act preclude Jones' recovery on this cause of action. The Fifth Circuit unequivocally holds that, notwithstanding some statutory ambiguity, section 794(a) governs Rehabilitation Act claims, and the higher level of causation established by this section is required.[55]

Moreover, the Court harbors serious reservations as to whether plaintiff qualifies as "an individual with a disability" such that the first element of her *prima facie* case is satisfied. As aforestated, neither a temporary impairment limiting a specific function nor the inability to work at the specific job of one's choosing is a substantial limitation on a major life activity.[56]   Not only does the record evidence dispel Jones' contention that her impairments substantially limited her ability to perform her particular job as a postal technician, the record is devoid of any evidence demonstrating that her alleged impairments substantially limit her ability to obtain work generally.

Assuming without deciding that Jones had a disability within the meaning of the Act, plaintiff has failed to show any failure to accommodate. It is clear that the Agency made every effort to provide Jones with a reasonable accommodation. Plaintiff accepted the Agency's May 1, 2000 offer of a modified job assignment. On July 11, 2002, Jones flatly refused the Agency's offer of a reasonable accommodation – *i.e.*, the modified limited duty assignment for work consistent with Dr. Swift's assessment of the plaintiff.

As a matter of law, the evidence in the record does not raise a fact issue as to whether Jones

---

[55] *See Soledad v. U.S. Dept. of Treasury,* 304 F.3d 500, 504-05 (5th Cir.2002); *Kurth v. Gonzales,* 472 F.Supp.2d 874, 879 (E. D. Tex. 2007).

[56]As previously discussed above, for purposes of evaluating whether one has a disability, the Rehabilitation Act and the ADA, and thus the cases interpreting them, are virtually interchangeable. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 n. 14 (5th Cir.1995).

had a disability or a record of a disability because there is no evidence of a substantial limit on a major life activity.   As previously explained, evidence of a substantial limitation on the ability to work requires a showing that an impairment "precluded [plaintiff] from a class of jobs or a broad range of jobs."[57]   There is no evidence of a limit on any major life activity.

Jones does not argue that the Postal Service regarded her as disabled.  The summary judgment evidence is uniformly to the opposite effect.  One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.[58]

No finder of fact could reasonably find on this record that plaintiff was disabled, had a record of disability or that the Postal Service regarded Jones as disabled. Indeed, the record reflects that the Agency was convinced that Jones was not disabled and her attendance violations suited her convenience and her school schedule, which happened to conflict with all of her  work assignments. An employee cannot succeed on the 'regarded as disabled' element of  a disability claim when her employer did not hinder and, in fact, encouraged her return to the full range of duties.[59] Notwithstanding the foregoing, this Court's determination that Jones did not have a disability within the meaning of the Rehabilitation Act is fatal to any claim for failure to provide a reasonable

---

[57] *Dupre,* 242 at 614; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

[58] *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir.2003).

[59] *Id.*

accommodation.[60]  There is no basis for an inference that the Postal Service regarded Jones as disabled.

Jones has not made a *prima facie* showing of disability discrimination or failure to accommodate.  Even if she had made that showing, the Postal Service has met its burden of articulating a legitimate nondiscriminatory reason for the decision to issue the 14-day suspension. Plaintiff has failed to raise a fact issue as to whether this reason was pretextual.

Moreover, plaintiff has failed to make out a *prima facie* case based on disparate discipline.[61] Indeed, Jones cannot raise a fact issue as to discrimination.  Fifth Circuit precedent holds that a mistaken but good-faith belief that an employee has violated the employer's rules is sufficient to rebut the *McDonnell Douglas* inference that the employee was disciplined for impermissible reasons. Under the *Mayberry* test, Jones must show either that she did not violate the posted rule or that, if she did, similarly-situated employees outside the protected class were punished less harshly. [62]  The evidence does not give rise to any factual dispute as to whether Jones violated a work rule or as to disparate discipline of similarly situated employees.

The evidence shows that, as a matter of law, the Postal Service had a reasonable, good-faith basis to believe that Jones repeatedly violated the work attendance rules and did so even after several warnings. The record is devoid of any proof of disparate discipline.  As a matter of law, Jones cannot raise a fact issue as to whether she was disciplined solely because she was disabled, regarded as

---

[60]*See Blanks v. Southwest. Bell Communications, Inc.,* 310 F.3d 398, 402 (5th Cir.2002) (analysis of reasonable accommodation is unnecessary when plaintiff is not protected by the ADA).

[61]*See Lee v. Georgia-Pacific Corp.*, 944 F.Supp. 497, 501-02 (S. D. Miss.1996) ( holding that plaintiff could not prove his case of disparate discipline after admitting to violating the work rule and then failing to prove that employees outside the protected class were treated differently).

[62] *Mayberry v. Vought Aircraft Co.*, 55 F.3d  1086, 1090 (5th Cir. 1995).

disabled or had a record of disability.

For all of the aforesaid reasons, summary judgment is warranted.  Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment is GRANTED.

New Orleans, Louisiana, this 16<u>th</u> day of July 2007.

> **DANIEL E. KNOWLES, III**
> **UNITED STATES MAGISTRATE JUDGE**

23